UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | Case No. 21-01609 ESL11 |
| MC TOURS INC | SubChapter V |
| Debtor | |

### EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO OBTAIN EMERGENCY CREDIT PURSUANT TO SECTION 105, 361, 362 AND 364 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001 (c)

TO THE HONORABLE BANKRUPTCY COURT

COMES NOW, Debtor, represented by the undersigned counsel, and very respectfully moves the Court for preliminary and permanent approval of 11 U.S.C. §364 post-petition financing. As detailed below, Debtor's post-petition financing request is fair, reasonable, and appropriate. Absent approval of this financing, it will be difficult for Debtor to be able to fund its daily operations and could be forced to shut down its business.

Specifically, Debtor seeks entry of interim and final orders to obtain post-petition financing on an emergency basis by authorizing Debtor to obtain the extension of the Economic Injury Disaster Loan (EIDL), up to the amount of $350,000.00, from the current and existing $150,000.00 EIDL Loan, under the terms and conditions set forth by the U.S. Small Business Administration (the "SBA"), by way of an Interim Order pending a final hearing on this Motion pursuant to Federal Rule of Bankruptcy Procedure 4001(c)(ii), if needed. Debtor further requests a Final Order for the approval of the Post-Petition Financing to be provided by SBA.

In support of this Motion, Debtor respectfully represents as follows:

**I. Jurisdiction**

1.  This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b) (2).

2.  Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory basis for the relief requested herein are Sections 105(a), 361, 362, 363, 364, 365, 1107 and 1108 of the Bankruptcy Code and F.R.B.P. 4001(c) and 6006.

**II. Summary of Operations**

4.  Debtor owns and operates a travel agency that provides travel and tourism-related services to the general public, travel accommodations and travelling packages for determined destinations, including but not limited to the sale of airlines and cruise ships tickets, excursions, hotels and car rentals on a commission basis, with its offices and operations located at Cll Mireya, Levittown, Toa Baja 00949.

**III. Borrower Current Financial Crisis and Prepetition Activities**

5.  The coronavirus pandemic crisis heavily impacted the travel economy with international travel suffering the sharpest decline falling 76% from previous year. Since the beginning of March and through the end of 2020, the pandemic resulted in $492 billion in cumulative losses for US travel economy, equating to a daily loss of approximately $1.6 billion for the ten months prepetition. In addition, the government imposed strict lockdown provisions resulted Debtor's operations being closed for months. All of the difficulties imposed by the pandemic to the travel industry have dislocated Debtor's operations and caused severe financial distress resulting in the instant bankruptcy petition. As a result of the coronavirus pandemic, travels paid for by customers were cancelled and significant number of payments made by

customers and forwarded by Debtor to travel suppliers such as airlines and cruise ships were not fully and/or timely returned, resulting in hundreds of claims against Debtor.

6. By filing its bankruptcy petition, Debtor will receive the benefits of the provisions of 11 U.S.C. § 362 (a), which stays all collection actions, administrative and judicial proceedings against Debtor, thus preventing a run to the courthouse by creditors, and Debtor will be afforded the opportunity to reorganize itself without the pressure that drove Debtor into bankruptcy, through a plan of reorganization as envisioned by the Bankruptcy Code.

**IV. Dealings with Lenders**

7. Prior to its bankruptcy filing, Debtor requested and received economic relief from the SBA due to Debtor's temporary loss of revenue resulting from the novel coronavirus pandemic crisis, including the COVID-19 Economic Injury Disaster Loan (the "EIDL"), in the amount of $150,000.00 (the "SBA Loan").

8. More recently, Debtor obtained notice for an SBA's loan to increase the EIDL to $350,000.00, form the current $150,000.00 (the "SBA Loan Increase").

9. The purpose of the SBA Loan Increase is to meet financial obligations and operating expenses that could have been met had the novel coronavirus pandemic crisis and resulting economic disaster not occurred.

10. The terms of the SBA Loan Increase include fixed interest rate at 2.75%, and maturity of thirty (30) years, subject to a general security agreement (UCC) designating business assets as collateral, upon the approval of the Court, and under the terms and conditions of the EIDL.

11. Proceeds of the EIDL will serve as working capital and normal operating expenses, for Debtor to support its activities and operations during the pendency of the

bankruptcy case and in furtherance of its reorganization efforts. If the SBA Loan Increase is approved, Debtor's actual cash on hand can be maximized to fund the plan and distributed to creditors, while allowing Debtor to continue its business operations and maximizing the current assets for the benefit of creditors.

### V. Relief Requested

12. It is essential to the success of this bankruptcy case that Debtor immediately obtains access to sufficient post-petition financing, i.e., the SBA Loan Increase, without which Debtor's activities and ability to generate income will be adversely affected, if not truncated. Absent Debtor's access to the working capital financing that will be available to Debtor under the proposed SBA Loan Increase, Debtor will not be able to orderly and effectively reorganize, pay its ordinary course of business operating expenses and maximize its business operations. Debtor's continuing feasibility will be impacted by its ability to access the Post-Petition Financing.

13. In order for Debtor to maximize its reorganization efforts, it is essential for Debtor to meet its financial obligations and operating expenses, which is precisely why the EIDL provides and stands for, and that Debtor's customers, the public, its sales force, and the employees retained maintain confidence and assurance in Debtor's activities.

14. Because of the commencement of Debtor's bankruptcy filing, Debtor must be allowed to take immediate, active steps to preserve its customer base and essential relationships therewith, as well as with Debtor's sales force and required personnel, at the same time preserving and safeguarding its assets. Debtor must be allowed to continue its activities in a manner unaffected by the commencement of the present bankruptcy case, for the novel coronavirus pandemic crisis and resulting economic disruption has generated more than

sufficient economic loss. Debtor needs to prevent any additional uncertainty and prevent any impairment to Debtor's ability to successfully reorganize.

15. Debtor has limited secured creditors, which will not be negatively affected by the instant request. That is, Debtor's assets are mainly unencumbered assets, apart from its vehicles that secure their corresponding loans.

**VI. Basis for Relief**

A. Legal Standard

    i. Section 364

16. If Debtor is authorized to operate its business, as in this case, Debtor may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense. 11 U.S.C. § 364(a).

17. The court may also authorize Debtor to obtain unsecured credit or to incur unsecured debt other than under Section 364(a), allowable under section 503(b)(1) of this title as an administrative expense. 11 U.S.C. § 364(b).

18. If Debtor is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court may authorize the obtaining of credit or the incurring of debt (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien. 11 U.S.C. § 364(c).

19. The court may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if (A) the trustee is unable to obtain such credit otherwise; and (B) there is adequate protection of the interest of the

holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.11 U.S.C. § 364(d)

20. Debtor proposes to obtain financing by way of the SBA Loan Increase pursuant to Section364(c)(1)–(3) and/or (d) of the Bankruptcy Code. The statutory requirement for obtaining post-petition credit under Section 364(c)(1), (c)(2), and (c)(3) of the Bankruptcy Code is a finding that Debtor is "unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense." 11 U.S.C. § 364(c).

21. To obtain financing pursuant to Section 364(c) of the Bankruptcy Code, some courts apply a three-part test, requiring the debtor in possession to show that:

(a) It could not obtain unsecured credit under section 364(b) – i.e., by allowing a lender an administrative claim;

(b) The credit transaction is necessary to preserve the assets of the estate; and

(c) The terms of the credit transaction are fair, reasonable, and adequate given the circumstances of the debtor-borrower and the proposed lender. In re Crouse Group, Inc., 71 B.R. 544, 550 (Bankr. E.D. Pa. 1987)at 550. When scrutinizing a debtor's business decision, such as the type and scope of a DIP Facility, bankruptcy courts routinely defer to the debtor's judgment, including the decision to borrow money on certain terms, so long as the decision at issue "involve[d] a business judgment made in good faith, upon a reasonable basis, and within the scope of [such debtor's] authority under the [Bankruptcy] Code." In re Curlew Valley Assocs., 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); Group of Institutional Investors v. Chi. Mil. St. P. R. Co., 318 U.S. 523, 550 (1943); In re Simasko Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court.").

22. Alternatively, Debtor may obtaining credit or incur in debt secured by equal lien, i.e., SBA's Loan and existing liens, as unable to obtain such credit otherwise and because the SBA Loan is adequately protected. 11 U.S.C. § 364(d)

23. In connection with Section 364 an important factor is the debtor's business judgment standard. If such business judgment has been reasonably exercised, courts should approve the proposed credit facility. See, e.g., NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984); In re Taylor, 913 F.2d 102, 107 (3d Cir. 1990); Sharon Steel, 872 F.2d at 39-40; In re Minges, 602 F.2d 38, 42 (2d Cir. 1979).

### ii. Debtor Satisfies the Section 364 Standards

24. Debtor is authorized to operate its business in this case. Yet, Debtor has been unable to obtain unsecured credit and incur unsecured debt in the ordinary course of business. This Court may, therefore, authorize Debtor to obtain credit or to incur in debt in the form of an extension of previously afforded credit, maintaining creditor's security interest.

25. Considering Debtor's financial woes and the encumbrance of a working capital facility of the type and magnitude needed here, financing could not have been obtained on an unsecured basis. Debtor explored various alternatives to bankruptcy. First, Debtor has significantly lowered expenses, reduced personnel, as well as office hours, among other stringent measures. Debtor then explored the financing market and obtained economic relief from the SBA, including the COVID-19 Economic Injury Disaster Loan. Next, Debtor exhausted every possible one-time source of liquidity. In short, all efforts to obtain additional, sustained liquidity were unsuccessful because of Debtor's financial condition resulting from the coronavirus pandemic crisis, and the potential lending market was unwilling to provide funds on unsecured terms or otherwise.

26. Courts have made clear that "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." <u>Bray v. Shenandoah Fed. Sav. & Loan Ass'n</u>, 789 F.2d 1085, 1088 (4th Cir. 1986). Rather, a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of Section 364(c) of the Bankruptcy Code. Id.; see also <u>In re Plabell Rubber Prods., Inc.</u>, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). In a case like this one, where there are few lenders who could consider extending the necessary credit to Debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." <u>In re Sky Valley, Inc.</u>, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988). Unsecured credit simply was unavailable to Debtor.

27. SBA's loan to Debtor is an extension of an existing facility. Yet, the lender is not bettering its position. Lender will maintain its current security status and interests. There are no security interests to be subordinated.

28. SBA is currently adequately secured, as are the other secured creditors in this case. The postpetition collateral is the same as the prepetition collateral. SBA is not encumbering any additional assets nor avoidance actions, although proceeds will be available to pay obligations.

29. Because the SBA credit facility is a special facility created to aid in the coronavirus pandemic crisis, the postpetition financing from SBA provides for a lower interest rate than any other facility in the market.

30. The SBA Loan Increase, if approved, will allow Debtor to cover its operating expenses while maximizing current assets to be distributed to creditors, for the benefit of creditors.

31. The SBA Loan Increase will allow for administrative payments, including payment of the US Trustee fees and payment of professionals in this case, without negatively affecting creditors.

32. More importantly, the SBA Loan Increase will allow for Debtor to acquire bulk packages at a substantial discount, which will be converted to revenue for the benefit of Debtor and creditors alike.

33. As detailed above, Debtor needs immediate access to this postpetition credit to be provided by SBA and to continue with its present credit facilities with SBA. As with most business activities, Debtor has significant cash needs. Access to substantial credit is necessary on an immediate basis to satisfy the services, and meet the day-to-day operating costs associated with operating Debtor's business. Access to sufficient cash is therefore critical for those purposes. In the absence of immediate access to cash and credit, Debtor's operating activities will be hindered, Debtor's current and future sales will be affected, and Debtor's customers will look elsewhere to purchase the services they require.

34. The success of Debtor's reorganization depends on the stabilization of Debtors' current activities and operations, and winning back confidence of its customers, required personnel, sales representatives, service and new material providers, and the maintenance of its facilities, with the required services. If that confidence were destroyed by, for example, the denial of this Motion, then Debtor's operations could collapse. In contrast, once the credit sought herein is approved, Debtor is confident that it can stabilize its business activities and achieve an improved financial performance, thereby maximizing its assets and reducing its operational risks. In reaching this conclusion, Debtor is mindful that the aforesaid persons and entities often respond favorably to approval of a comprehensive debtor in possession financing. See In re

Ames Dep't Stores, Inc., 115 B.R. at 36 ("It is given that most successful reorganizations require the debtor-in-possession to obtain new financing simultaneously with . . . the commencement of the Chapter 11 case.").

35.     Debtor cannot wait for the beneficial effects of the postpetition credit; any substantial delay would have the same effect as a denial of this motion. Debtor's need for access to the Post-Petition Financing is therefore immediate.

**B.     The Terms of the Postpetition Financing Are Fair, Reasonable, and Appropriate.**

36.     The proposed terms of the Post-Petition Financing are fair, reasonable, and appropriate in that they neither (a) tilt the conduct of this case and prejudice the powers and rights that the Bankruptcy Code confers for the benefit of all creditors, nor (b) prevent motions by parties in interest from being decided on their merits. Like the facility approved in Sky Valley, the purpose of the post-petition facilities here is to enable Debtor to maintain the value of its estate while formulating a confirmable plan of reorganization. Accord In re First S. Sav. Ass'n, 820 F.2d 700, 710-15 (5th Cir. 1987).

**C. Debtor Satisfies the "Business Judgment" Standard Applicable To Section 364.**

37.     As described above, after appropriate investigation and analysis, Debtor has concluded that it could not obtain credit on an unsecured basis, that the money sought under the proposed postpetition financing set forth herein is necessary to preserve Debtor's estate and ensure a successful reorganization, and that the terms of the postpetition credit are fair, reasonable, and appropriate. Bankruptcy courts routinely defer to the debtor's judgment on business decisions, including the decision to borrow money on certain terms, so long as the decision at issue "involve[d] a business judgment made in good faith, upon a reasonable basis, and within the scope of [such debtor's] authority under the [Bankruptcy] Code." In re Curlew

10

Valley Assocs., 14 B.R. at 513-14; accord Group of Institutional Investors, 318 U.S. at 550; In re Simasko Prod. Co., 47 B.R. at 449 ("Business judgments should be left to the board room and not to this Court."); In re Lifeguard Indus., 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

38. Given the magnitude, complexity, and immediacy of Debtor's financing needs, and its purpose and efforts to ensure that the terms of the postpetition financing benefit the estate, this Court should find that Debtor properly exercised its business judgment and grant Debtor authority to enter into the postpetition financing on the contemplated secured, basis under Section 364 of the Bankruptcy Code and to take such other actions contemplated under those agreements and as requested herein. This is the vital first step in the path of Debtor's reorganization as contemplated in the Bankruptcy Code.

**VII. Request for Modification of Automatic Stay**

39. The postpetition financing contemplates a modification of the automatic stay established pursuant to Section 362 of the Bankruptcy Code to permit SBA, in its sole discretion, to: (a) collect its post-petition indebtedness; (b) file financing statements, mortgages, or other similar documents to evidence the security interests under the credit facility; (c) take such other action required or permitted by the credit facility.

40. A stay modification provisions of this sort are ordinary and usual features of postpetition debtor in possession financing facilities and, (b) in Debtor's business judgment, are reasonable and fair under the present circumstances.

### VIII. Request for Immediate Interim Relief

41. Pending the need of a hearing, Debtor requires immediate financing for, among other things, the funding of payroll obligations, its operations and other working capital needs. It is essential that Debtor immediately stabilize its operations and maximize its potential for a successful reorganization.

42. Moreover, the EIDL and SBA Loan Increase is only temporarily available and subject to availability. As such, an immediate relief is needed.

43. Absent near immediate access to debtor-in-possession financing, it will be difficult for Debtor to reorganize. Based on its current business plan, Debtor will need to begin accessing the SBA Loan Increase immediately upon its availability. Any delay in the granting of this Motion will seriously affect Debtor's operations and the maximization of its assets.

44. Absent immediate financing for its operations, Debtor will struggle to pay operating expenses while maximizing its business operations and obtaining the best deals in the industry to be converted to revenues for the benefit and distribution to creditors pending a final hearing, if any is needed.

45. Consequently, if interim relief is not obtained, Debtor's attempt to reorganize will be immediately and irreparably jeopardized to the detriment of its estate, its creditors, and other parties in interest.

46. Accordingly, Debtor moves for the Court to approve the instant SBA Loan Increase. Debtor further requests that, pending a final hearing, if any is needed, this Court enter an Interim Order as soon as practicable allowing Debtor's request for authorization to obtain the postpetition financing consistent with the terms and conditions contained herein.

**WHEREFORE,** Debtor respectfully requests that the Court enter interim and final orders authorizing Debtor to enter into and obtain postpetition credit and modify the automatic stay to permit SBA to take certain actions in respect to the postpetition credit, as necessary under the SBA Loan, while granting such other relief as the Court deems just and proper.

## NOTICE

Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk's office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

**CERTIFICATE OF SERVICE:** I hereby certify that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants of CM/ECF, including the Office of the United States Trustee.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 21st day of July, 2021.

**MRO Attorneys at Law LLC**
*Attorneys for Debtor*
PO Box 367819
San Juan, PR 00936-7819
Tel. 787-404-2204
Email: mro@prbankruptcy.com
Web: www.prbankruptcy.com

*s/ Myrna L. Ruiz-Olmo*
USDC-PR No. 223209

13